Filed 6/9/21  P. v. Torkelson CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JAMES DAVID TORKELSON,<br><br>        Defendant and Appellant. | D078237<br><br><br>(Super. Ct. No. SCD193624) |

APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Waldemar D. Halka, under appointment by the Court of Appeal, for Appellant and Defendant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Deputy Attorney General, Lynne McGinnis and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

In 2009, a jury found James David Torkelson guilty of two counts of first degree murder and found a special circumstance that the murders occurred during the commission of a robbery true as to each count, among

other charges.  (Pen. Code,[1] §§ 187, subd. (a), 190.2, subd. (a)(17).)  He was sentenced to two consecutive terms of life in prison without the possibility of parole.

In 2019, following changes to the law regarding felony murder, Torkelson filed a petition for resentencing pursuant to section 1170.95.  The trial court denied the petition and Torkelson appeals.  He asserts the trial court erred by concluding the he was ineligible for relief under section 1170.95 based on the jury's felony murder special circumstance findings.  We find no error and affirm the trial court's order denying Torkelson's petition.

FACTUAL AND PROCEDURAL BACKGROUND

*The Robbery*

The following facts regarding the underlying crimes are summarized from this court's unpublished opinion in defendant's direct appeal, *People v. James David Torkelson* (Feb. 10, 2011, D055104) [nonpub. opn.] (*Torkelson I*), in which we affirmed the judgment of conviction.

In July 1999, Torkelson began working for a security company, City Events, and was assigned as a security guard at the Five Star Park Shuttle and Fly (Five Star) parking lot near the San Diego airport.  On July 11, Torkelson was automatically terminated in accordance with company policy after he failed to show up for a shift without contacting his supervisor.

At about 11:30 p.m. on July 17, 1999, Torkelson arrived at the Five Star lot dressed in his security guard uniform.  Two other security guards, one ending a shift and one about to take over and start a new shift, questioned Torkelson's employment status, but Torkelson assured them that it was okay for them to go home.

---

[1]     All further statutory references are to the Penal Code.

2

Approximately one hour later, a man with a nylon stocking over his face approached the ticket booth with a gun drawn. The ticket booth attendant pressed the button on his handheld radio to alert Torkelson of the situation, but Torkelson did not respond. The gunman then sat in the booth with his foot on the attendant's back and emptied the cash register, taking approximately $100.

Around the same time, two other employees were counting money from the shift change in a nearby business trailer. The ticket booth attendant heard the door close on an outside bathroom, and then heard the gunman order someone inside the trailer. Shortly thereafter, he heard a series of gunshots. The attendant saw the gunman run from the trailer and meet up with two other men. A van arrived to pick up one of the workers but made a U-turn and left because the robbers began shooting at it.

The attendant called 911 and reported the incident. While he was on the phone, Torkelson ran up and yelled that there were "two down" and "187." The attendant handed the phone to Torkelson, and Torkelson told the operator two people had been shot in the head, but that he had not seen anything. The attendant went to the business trailer and confirmed two employees were dead, with bullet wounds to the head. Meanwhile, the robbers ran across the street to another commercial parking lot and stole a getaway vehicle at gunpoint.

Two days later, on July 19, Torkelson attempted to pick up his final check from City Events. The receptionist explained that he needed to return his uniform and equipment, and he became agitated and stated he did not have them and that they were in Arizona. He left and did not return again.

Although the police initially suspected Torkelson, they were unable to identify his accomplices until several years later. During a recorded phone

3

call in 2002, Jeffery Young admitted his involvement in the robbery. Young said the robbery was poorly planned, causing him to be nervous, and that they had forgotten items they intended to use to tie up their victims. He admitted that he had panicked and killed one of the victims and identified Max Anderson as the shooter of the second victim. Young also said that he and the others had shot at the van while running away.

*The Trial*

In 2005, Torkelson was charged with two counts of murder, one count of attempted murder, and carjacking. The prosecutor presented a case based on felony murder at trial, and several witnesses indicated the robbery was Torkelson's idea, and that Torkelson was the mastermind behind the plan. He explained the layout of the facility to the others, informed them that certain security cameras were not working, and laid out a plan that involved using the facility's handheld radios to communicate during the robbery. He told the others there would be one attendant in the parking booth and a night manager inside the office trailer with the safe open to count the money from the prior shifts. They planned cut the phone lines and use duct tape to tie up the victims. Prior to the robbery, Anderson provided guns to Young and another accomplice and Torkelson gave the group nylon stockings to cover their faces.

At the conclusion of the trial, the court instructed the jury on felony murder and the special circumstance of murder during the commission of a robbery. Of particular relevance here, the court used CALJIC 8.81.17 and stated:

"Murder committed during the commission of a robbery.

". . . If you find the defendant was not the actual killer of a human being, you cannot find this special circumstance to be true *unless you are satisfied beyond a reasonable doubt that such*

4

*defendant with the intent to kill or with the reckless indifference to human life as a major participant, aided, abetted, counselled, commanded, induced, solicited, requested or assisted in the commission of the crime of robbery which resulted in the death of [the victims].*

"A defendant acts with reckless indifference to human life when the defendant knows or is aware that his acts involve a grave risk of death to innocent human beings." (Emphasis added.)

The jury found Torkelson guilty of both counts of first degree murder and found the special circumstance of murder during the commission of a robbery within the meaning of section 190.2, subdivision (a)(17) true as to each count. Torkelson was sentenced to two consecutive terms of life in prison without the possibility of parole.

*The Petition for Resentencing*

In 2019, Torkelson filed a petition for resentencing pursuant to section 1170.95. The trial court appointed counsel for Torkelson and, after full briefing and argument, denied the petition. Relying on *People v. Galvan* (2020) 52 Cal.App.5th 1134 (*Galvan*) and *People v. Gomez* (2020) 52 Cal.App.5th 1 (*Gomez*), the trial court found that Torkelson was ineligible for resentencing pursuant to 1170.95 based on the special circumstance findings.

Torkelson appeals.

DISCUSSION

I. *Applicable Law*

"In 2018, the Legislature passed and the Governor signed into law Senate Bill No. 1437 . . . (Senate Bill 1437), legislation that prospectively amended the mens rea requirements for the offense of murder and restricted the circumstances under which a person can be liable for murder under the felony-murder rule or the natural and probable consequences doctrine.

5

(Stats.2018, ch.1015.)" (*People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 274.)

As relevant here, Senate Bill No. 1437 amended sections 188 and 189 to "prohibit a participant in the perpetration or attempted perpetration of one of the specified first degree murder felonies in which a death occurs from being liable for murder, unless the person was the actual killer or the person was not the actual killer but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer, or the person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (Legis. Counsel's Dig., Sen. Bill No. 1437 (2017–2018 Reg. Sess.).)

In addition, Senate Bill No. 1437 also added section 1170.95, which creates a procedure for a defendant who was prosecuted under a theory of first-degree felony murder, or natural and probable consequences, but who could no longer be convicted of murder because of the changes made to sections 188 and 189 to petition to vacate the murder conviction, and for resentencing on any remaining counts. (Sen. Bill No. 1437 (2017–2018 Reg. Sess.) § 4; *Gooden*, *supra*, 42 Cal.App.5th at p. 274.)

Pursuant to section 1170.95, if a petitioner has made a prima facie showing that the prosecution proceeded under a felony murder theory, the jury convicted the petitioner of first or second degree murder, and the petitioner could not be convicted of first or second degree murder in light of changes to sections 188 or 189, the trial court shall appoint counsel to represent the petitioner and accept briefing. (See § 1170.95, subd. (c); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327–328 (*Verdugo*), review granted Mar. 18, 2020, S260493.) After briefing, the court makes a "second prima facie review." (*Id.* at p. 328.) " '[T]he court takes petitioner's factual

6

allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.'" (*Ibid.*; § 1170.95, subd. (c).)

II. *Analysis*

Here, the trial court appointed counsel and accepted briefing but denied the petition on a "second prima facie review" without issuing an order to show cause. Torkelson asserts the trial court erred when it concluded the jury's previous felony murder special circumstance finding made him ineligible for relief under section 1170.95.

There is no dispute that Torkelson was not the actual killer, and that he was convicted of first degree murder based on a felony murder theory. Following the amendments to sections 188 and 189 effectuated by Senate Bill No. 1437, Torkelson could be convicted under such a theory only if the jury found he, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] . . . [or he] was a major participant in the underlying [robbery] and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 188, subd. (a)(3); § 189, subd. (e)(2), (3).)

In finding the felony murder special circumstance true, the jury necessarily found Torkelson "with the intent to kill or with the reckless indifference to human life as a major participant, aided, abetted, counselled, commanded, induced, solicited, requested or assisted in the commission of the crime of robbery which resulted in the death[s]." As that finding satisfies the requirements of the law as amended, the trial court correctly concluded Torkelson was ineligible for relief under section 1170.95. (See *Galvan, supra,*

7

52 Cal.App.5th 1134; *Gomez, supra,* 52 Cal.App.5th 1; see also *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted Jan. 13, 2021, S265918; *People v. Jones* (2020) 56 Cal.App.5th 474, 479–485, review granted Jan. 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 457 (*Allison*); *People v. Murillo* (2020) 54 Cal.App.5th 160, 168–169, review granted Nov. 18, 2020, S264978 (*Murillo*); *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419–420.)

Torkelson asks us to reject the reasoning in *Galvan* and *Gomez*, which the trial court relied on, and to instead follow the alternate analysis set forth in *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011 (*Torres*). (See also *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, review granted Nov. 18, 2020, S264954; *People v. Law* (2020) 48 Cal.App.5th 811, review granted July 8, 2020, S262490.) In *Torres*, the court found special circumstance findings were not sufficient to make the petitioner ineligible for relief under section 1170.95 where the findings were made before *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, because, in those cases, the California Supreme Court narrowed the meaning of the key terms "major participant" and "reckless indifference" as used in section 190.2. (*Torres,* at p. 1179.)

The trial court acknowledged *Torres*, and other cases following the same reasoning, but "made the decision to follow the appellate opinion emanating from its own appellate district." We find no error in that decision, and also elect to follow *Galvan* and *Gomez*.[2]

---

[2]    We note that both *Galvan, supra,* 52 Cal.App.5th 1134, and *Gomez, supra,* 52 Cal.App.5th 1 were decided after *Torres, supra,* 46 Cal.App.5th 1168, and the court in *Galvan* directly addresses the conflict between *Gomez* and *Torres*. (See *Galvan, supra,* at p. 1141.)

Torkelson asserts *Galvan* and *Gomez* were wrongly decided in two ways. First, he asserts the courts incorrectly concluded that holding an evidentiary hearing in cases such as this—where the jury made a special circumstance finding prior to *Banks* and *Clark*—would require the prosecution to prove the special circumstance beyond a reasonable doubt a second time. (See *Galvan, supra*, 52 Cal.App.5th at p. 1143.) He argues, to the contrary, that in such cases the prosecutor has not previously proven the defendant was a major participant who acted with reckless indifference as those terms are now defined. However, even assuming, without deciding, that *Banks* and *Clark* materially changed the meaning of those terms, the appropriate procedure to address any inconsistencies in that regard is through a writ of habeas corpus. (*Galvan, supra,* at pp. 1142–1143; *Murillo, supra*, 54 Cal.App.5th at p. 168; see also *Allison, supra,* 55 Cal.App.5th at pp. 458–459 [explaining *Banks* and *Clark* merely clarified previously existing legal principles].)

Torkelson concedes that he could pursue his argument regarding the felony-murder special circumstance through a writ of habeas corpus but argues he should be permitted to do the same through the section 1170.95 petition as well, as section 1170.95 allows him to challenge the murder conviction itself, and not just the special circumstance. However, as discussed in *Galvan*, section 1170.95 allows a petitioner to petition for a vacation of conviction based on the changes to section 188 and 189 implemented by Senate Bill No. 1437, and not based on other changes to the law. (*Galvan, supra,* 52 Cal.App.5th at p. 1142.) As Torkelson further concedes, if he were to successfully reverse the special circumstance finding by way of a habeas proceeding, he could then file a section 1170.95 petition to

9

reverse the murder conviction. He asserts he should not have to file two separate proceedings, but that is the procedure the legislature has provided.

Second, Torkelson argues the legislature anticipated the holdings in *Galvan* and *Gomez* and signaled a special circumstance finding would not preclude eligibility under 1170.95 when it stated, where "the prosecution fails to sustain its burden of proof, the prior conviction, *and any allegations and enhancements attached to the conviction,* shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3), emphasis added.) This language does not address the impact of special circumstance findings on the eligibility for relief in the first instance, and instead speaks to the procedure for resentencing *if* the petition is granted.

Torkelson further points out that section 1170.95, subdivision (d)(2) directs vacatur of a conviction and resentencing if there was a prior finding by a court or jury that the petitioner did *not* act with reckless indifference to human life or was *not* a major participant. Again, this language addresses a different scenario than the one at hand. Moreover, although the legislature was certainly aware of the relevant holdings in *Banks* and *Clark*, it made no attempt to distinguish the terms "reckless indifference" or "major participant" based on those holdings. If anything, this language supports the reasoning in *Galvan* indicating a defendant must pursue issues based on the holdings in *Banks* and *Clark* through a habeas proceeding, as opposed to a section 1170.95 petition.

In sum, we are not persuaded by Torkelson's arguments. Like the trial court, we acknowledge the split between the *Galvan* and *Torres* lines of cases but, in the absence of further guidance from a higher court, we continue to follow the reasoning and conclusions set forth in *Galvan* and *Gomez*.

10

## DISPOSITION

The order of the trial court denying defendant's section 1170.95 petition for resentencing is affirmed.

BENKE, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

11