Filed 9/27/22  P. v. Chiaia CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ZACHARIAH CHIAIA,<br><br>    Defendant and Appellant. | 2d Crim. No. B312891<br>(Super. Ct. No. SB199196)<br>(Santa Barbara County) |

Zachariah Chiaia appeals an order denying his 2019 petition for resentencing of his 1994 second degree murder conviction (Pen. Code, § 187, subd. (a)[1]) under former section 1170.95, renumbered, effective June 30, 2022, as section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)  He was sentenced to 15 years to life in state prison.  The trial court issued an order to show cause.  It subsequently denied the

---

[1] All statutory references are to the Penal Code unless otherwise stated.

petition.  We conclude, among other things, that the court did not err by denying the petition.  We affirm.

FACTS

On May 25, 1993, Chiaia, then 18 years old, and his friends Chad L., then 14, and Robert C., then 14, were "hanging out" together.  "One of them, apparently [Chiaia], suggested that they beat up somebody for something to do."

They went to a park where homeless people often sleep at night, and they spotted "Louis Altmark, 58, lying on a bench."  Chiaia approached Altmark and hit his forehead.  Altmark stood up, "at which time the three young men hit him, possibly twenty times."  Altmark did not fight back, he "merely shielded himself" from the attack.

The three young men left.  They walked around the park and ended up where Altmark was again lying on a bench.  Altmark saw the young men.  He jumped up and ran.  Chiaia ran after him and "tackled him to the ground."  Robert C. and Chad L. "started kicking Altmark in the ribs."  Chiaia hit and kicked Altmark in the head and ribs.

Altmark made "a snoring sound which appeared to indicate that [he] was unconscious."  Robert C. "rifled through" Altmark's backpack "for drugs or money."  "After removing a cigarette lighter, he threw the things in the pond to dispose of fingerprints."

The three of them headed for Chad L.'s house, but they turned around and went back to the park.  "Robert C. and [Chiaia] realized they had blood on them and they did not want Mr. Altmark to drown in his own blood."  They flipped Altmark over, and Chiaia took Altmark's wallet.

Chiaia and Robert C. went to the apartment of a friend of Robert C. "where [Robert C.] bragged to his friend that they had beaten someone up." Robert C. thought he kicked Altmark "less than 20 times while [Chiaia] kicked him less than 10 times."

The next morning Altmark "was found" and taken to the hospital. "He had a severe head injury, a swollen and bloody face, was unconscious, had low body temperature, a fractured rib, and irregular heart rhythm." "[Altmark] was essentially brain dead."

"The emergency room physician testified that he rated the beating on a scale of one to ten in seriousness as a 'ten' and could not recall having seen a more serious beating." Altmark died in early August. "The forensic pathologist determined Mr. Altmark's cause of death as cerebral contusions with subdural and subarachnoid hemorrhage due to blunt head trauma."

Two days after the attack on Altmark, Chiaia went to the police department and spoke with Sergeant McCaffrey. He told McCaffrey, " 'He got beat. I'm not going to tell you who was with me, I'm not a rat.' " McCaffrey said Chiaia told him that he kicked " 'the victim in the face and upper chest area three or four times. [Chiaia] had tried to stop the others and assessed his involvement in the assault as 10 percent.' " Chad L. claimed Chiaia did not request the others to stop or attempt to restrain them during the attack.

The People filed an information charging Chiaia with one count of murder. After a trial by jury, Chiaia was convicted of second degree murder. We affirmed the conviction and stated, "The evidence was overwhelming that [Chiaia's] kicks and punches, in combination with those of his cohorts, [were] a direct cause or a substantial factor in Mr. Altmark's death."

In 2019, Chiaia filed a petition for resentencing under former section 1170.95. The trial court issued an order to show cause. The court held a total of eight hearings on various stages of Chiaia's petition. The last two hearings involved the People's return to the court's issuance of an order to show cause (OSC) and their request to reconsider the issuance of the OSC. The prosecutor claimed the uncontradicted evidence in the trial transcripts showed Chiaia was an actual killer and therefore categorically ineligible for section 1170.95 relief.

At the final hearing Chiaia's counsel told the trial court he did not need a further hearing to present new evidence because he was not presenting any additional evidence. He was relying on the facts in the record of conviction that included the trial transcripts. The People also elected to rely on the evidence admitted at Chiaia's jury trial. The court took the matter under submission. In denying the petition, the court found "the prosecution has proven the elements of second degree murder beyond a reasonable doubt." It found Chiaia was not eligible for relief under former section 1170.95.

## DISCUSSION

*Resentencing Under Section 1170.95 (Now Section 1172.6)*

The origin of former section 1170.95 was the passage of Senate Bill No. 1437 in 2018. (Stats. 2018, ch. 1015, § 4.) "Senate Bill 1437 'amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed *on a person who is not the actual killer*, did not act with the intent to kill, or *was not a major participant* in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417, italics added.)

4

A defendant convicted of murder may file a petition under this section alleging he or she "could not be convicted of first or second degree murder" because of changes to the law required by Senate Bill No. 1437. (*People v. Gutierrez-Salazar*, *supra*, 38 Cal.App.5th at p. 417.) If the petitioner has made a prima facie showing that he is entitled to resentencing relief, the trial court will issue an order to show cause for a second stage hearing. At that hearing the court will make independent findings on the evidence and decide whether to resentence the defendant. An appellate court reviews those findings for substantial evidence and draws all reasonable inferences in favor of the trial court's decision. (*People v. Crosswhite* (2002) 101 Cal.App.4th 494, 507-508.)

### *The Standard the Trial Court Used to Make Its Findings*

Chiaia contends the trial court used an incorrect standard to make its findings. He notes the court cited a case that applied a substantial evidence standard.

But, as the People note, the trial court also made an alternative finding as "an independent factfinder" and applied the correct standard. The court said, "[T]he prosecution has proven the elements of second degree murder *beyond a reasonable doubt*." (Italics added.) The court cited a case containing an incorrect standard, but it *applied* the correct beyond a reasonable doubt standard to make its findings. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.)

### *Consideration of Facts from an Appellate Opinion*

Chiaia contends the trial court erred by considering facts from the statement of facts in the appellate decision that affirmed his second degree murder conviction.

5

But Chiaia did not object to the admission of facts from that decision.  Consequently, he has forfeited this issue.  (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20-21.)  But even had he objected, the result does not change.

Chiaia argues that when the trial court denied his petition, facts in appellate opinions were part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue. (*People v. Woodell* (1998) 17 Cal.4th 448, 457.)  But he claims Senate Bill No. 775 (Sen. Bill 775) changed the procedure at the evidentiary hearing because it did not include the language of the former statute that authorized relying on those facts.  He claims Sen. Bill 775 is fully retroactive and he is entitled to a reversal.

"[A] change in the criminal law will be given retroactive effect when a rule is substantive rather than procedural."  (*In re Martinez* (2017) 3 Cal.5th 1216, 1222.)  Sen. Bill 775 (2021-2022 Reg. Sess.) made substantive changes that are retroactive. (Stats. 2021, ch. 551, § 2.)  But it also made procedural changes to the evidentiary hearing.  Procedural changes generally apply prospectively.  (*Martinez*, at p. 1222.)  "There is no statement in Senate Bill 775 indicating that the procedural change is to be applied retroactively on appeal."  (*People v. Owens, supra*, 78 Cal.App.5th at p. 1026.)  This arguably may indicate an intent not to make the procedural changes retroactive.  (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724.)

But we need not decide that issue because, assuming arguendo that the Sen. Bill 775 procedural changes are retroactive to pending cases, the result will not change.  Sen. Bill 775 provides, "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may

6

consider *evidence previously admitted at any prior* hearing or *trial* that is *admissible under current law*, including *witness testimony*, stipulated evidence, and matters judicially noticed." (Former § 1170.95, subd. (d)(3), now section 1172.6, subd. (d)(3).) The material facts in our decision in this case recited "evidence previously admitted" at trial which is "admissible under current law." "[W]e presume the facts previously stated by this court were faithful to the appellate record before us and reliably summarized the evidence against defendant." (*People v. Guilford* (2014) 228 Cal.App.4th 651, 661; *People v. Harris* (2021) 60 Cal.App.5th 939, 959, fn. 13, review granted April 28, 2021, S267802.) Consequently, facts reciting admissible trial witness testimony in appellate decisions, as here, may be considered as evidence by trial courts in resentencing proceedings. (*People v. Lewis* (2021) 11 Cal.5th 952, 972 [the appellate opinion is part of the record of conviction in section 1170.95 proceedings]; *People v. Woodell, supra*, 17 Cal.4th at p. 457; *Harris*, at p. 959, fn. 13; *People v. Williams* (2020) 57 Cal.App.5th 652, 662; *Guilford*, at p. 661.) "[T]he appellate opinion is part of the record of conviction and factual statements in the opinion are admissible in section 1170.95 proceedings . . . ." (*Harris*, at p. 959, fn. 13.)

Moreover, the trial court here also had the trial transcripts. Chiaia claims the court exclusively relied on the facts in the appellate opinion. That is not correct. The court said, "[T]he court is left to render a decision based on the *record of conviction*, including the Court of Appeal's decision." (Italics added.) Because the court had the trial evidence in the record before it, and decided facts from the record of conviction, it had the evidence authorized by Sen. Bill 775. (*People v. Owens, supra*, 78 Cal.App.5th at p. 1022.) The court made its own findings using a

7

beyond a reasonable doubt standard and found Chiaia acted with "malice"; he initiated the beating, attacked Altmark, acted with a conscious disregard for human life; and his self-serving statements to police were not credible. Chiaia has not shown that any of the trial court's fact findings were not supported by admissible evidence in the record of conviction. (*Ibid.*) Moreover, Chiaia's trial court brief contains a compelling admission – "Mr. Chiaia admits to having *repeatedly kicked the victim in the head*." (Italics added.)

*Consideration of Youth Offender Traits*

Chiaia contends the trial court erred by not considering his "youth-offender traits" to make findings on such issues as malice and a reckless disregard for human life.

"Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' " (*In re Scoggins* (2020) 9 Cal.5th 667, 676.) The greater the defendant's participation in the crime, " 'the more likely that he acted with reckless indifference to human life.' " (*People v. Clark* (2016) 63 Cal.4th 522, 615.)

Chiaia cites *In re Moore* (2021) 68 Cal.App.5th 434, where the court held a minor's youth was a relevant factor in determining whether he acted with reckless indifference to human life. That case involved a 16 year old who was not the actual killer.

*In re Harper* (2022) 76 Cal.App.5th 450 involved a 16 year old convicted of murder who was not the actual killer. The court said, "We need not decide today whether youth is a factor that *must* be considered whenever the *Banks/Clark* [*People v. Banks* (2015) 61 Cal.4th 788; *People v. Clark, supra,* 63 Cal.4th 522] analysis is conducted for a defendant who was a minor at the

8

time of the offense." (*Id*. at p. 470.) But without deciding that issue, the court nevertheless weighed evidence of youth-related factors with the facts of the offense. The youth-related factors were not sufficient as a mitigating factor given the aggravating facts of his crime.

The trial court considered Chiaia's claim that his youth was a mitigating factor. But it found he did not present youth trait evidence to show lack of malice. Chiaia claimed his age, "immaturity, and his organic inability to adequately contemplate and appreciate the consequences of his actions" should be considered. But this was a conclusory claim. Youth-related evidence depends on the "evidence" or "offer of proof" presented. (*People v. Howard* (2021) 74 Cal.App.5th 141, 152.) Chiaia presented no evidence other than his age. The trial court may not speculate about evidence Chiaia did not present. Because this was personal information, that only he would know, the court could draw unfavorable inferences against him. (Evid. Code, § 412.)

Moreover, Chiaia did not even make an offer of proof. The court, noting this, said, "[P]etitioner has *not indicated what evidence he would offer* to demonstrate the *absence of malice* based on his immaturity." (Italics added.) In cases involving juveniles, the "presumption of immaturity" may be rebutted where there is "no *particularized mitigating evidence before the court*." (*People v. Blackwell* (2016) 3 Cal.App.5th 166, 202, italics added.) Unlike *Moore* and *Harper*, Chiaia was an *adult* and an *actual* killer. " '[C]hildren are constitutionally different from adults for purposes of sentencing' " (*People v. Jackson* (2021) 61 Cal.App.5th 189, 197), and defendants who participate in killing

9

are categorically different than those who do not. (*People v. Gutierrez-Salazar, supra,* 38 Cal.App.5th at p. 417.)

Moreover, even where youth-related trait evidence is presented, it may not be sufficient as a mitigating factor where the crime involves: 1) the defendant's willing participation in a serious crime posing "a very high risk" that the victim "would die"; 2) the defendant showed "indifference" to the victim's fate; or 3) where there are other significant *Banks/Clark* aggravating factors. (*In re Harper, supra,* 76 Cal.App.5th at p. 472.)

These aggravating factors are present here. Chiaia directly participated in a deadly attack. The danger was increased because this was a surprise group attack on a helpless unsuspecting victim. There was a "very high risk" of death because the emergency room physician testified he "could not recall having seen a more serious beating." Chiaia showed "a willingness to use" violent force. (*People v. Clark, supra,* 63 Cal.4th at p. 619.) Violence was not an incidental or unexpected result; it was *the goal* of this crime. Chiaia knew his "confederate's propensity for violence" because he participated in the group attack with them. (*In re Scoggins, supra,* 9 Cal.5th at p. 677.) Chiaia's "own actions" played a role in the victim's death. (*People v. Banks, supra,* 61 Cal.4th at p. 803.) He made no effort to "minimize the possibility of violence during the crime." (*People v. Owens, supra,* 78 Cal.App.5th at p. 1024; see also *Scoggins,* at p. 677.)

Chiaia's conduct after the attack showed a callous disregard for the victim. He took advantage of the injured man by taking his wallet and leaving him to die without calling for emergency medical assistance. (*People v. Douglas* (2020) 56 Cal.App.5th 1, 10.) The trial court could also reasonably infer the

common juvenile trait of a minor being influenced by other juvenile peers or older criminals was not present. Chiaia was *the adult* who committed this offense with minors.

The trial court found Chiaia's "self-serving statements about his attempts to stop his accomplices lack credibility, particularly in light of his active role in the beatings." It found Chiaia "initiated the beating" and he "tackled" the victim "when he tried to run away." "[T]he trial court was not limited to considering only appellant's self-serving statements to determine his mental state, particularly when those statements were made to police when appellant had an incentive to minimize his involvement." (*People v. Owens, supra*, 78 Cal.App.5th at p. 1025.) The court "properly considered all of the evidence in determining appellant acted with reckless indifference." (*Ibid.*) It could reasonably infer the lack of provocation, violence, deliberate brutality of this crime and the callous nature of Chiaia's actions outweighed any mitigating factors. (*In re Harper, supra*, 76 Cal.App.5th at p. 472.)

### *Right to a Due Process Hearing*

Chiaia contends he did not receive a hearing complying with due process standards or the requirements of section 1170.95. We disagree.

The trial court *held eight hearings* at the various stages of his petition. The eighth hearing was a second stage hearing. The court had issued an OSC. The People filed a return. Counsel for the parties appeared. The trial transcripts had been filed with the court. The evidence admitted at trial constituted admissible evidence for the hearing. Both parties agreed there would be no new evidence. The People cited facts from the record to show Chiaia was guilty of second degree murder. The parties filed

11

briefs citing the evidence from the trial transcripts. The court took the matter under submission and then filed a written decision, making independent fact findings and ruling the People had met their burden of proof.

Chiaia contends the trial court erred by not holding a *ninth hearing* to consider new evidence. The People respond this claim is barred by the invited error doctrine.

At the October 6, 2020, hearing, the trial court asked Chiaia's counsel whether he was going to present new evidence at another hearing. Counsel said, "At this stage it's simply argument on the evidence and on the transcript of the trial record." Counsel felt another hearing was not necessary. The court relied on the *option* selected by Chiaia's counsel. (*People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1408.) There was no error and no reason to hold a ninth hearing to consider new evidence when there was no new evidence to be presented. (*People v. Owens, supra,* 78 Cal.App.5th at p. 1022.)

*Chiaia's Ineligibility for Resentencing Relief*

The People contend the trial court correctly denied the petition because Chiaia was "an actual killer."

A defendant who was an actual killer is not entitled to relief under former section 1170.95 or current section 1172.6. (*People v. Gutierrez-Salazar, supra,* 38 Cal.App.5th at p. 417.) As we stated in our prior decision that affirmed Chiaia's second degree murder conviction, "The evidence was overwhelming that [Chiaia's] kicks and punches, in combination with those of his cohorts, [were] a direct cause or a substantial factor in Mr. Altmark's death." The trial court may consider the record of conviction in deciding whether a petition is "meritless." (*People v. Lewis, supra,* 11 Cal.5th at pp. 970-971; *People v. Owens, supra,*

12

78 Cal.App.5th at p. 1022.)  Before issuing its order to show cause, the trial court found Chiaia was "an actual killer."

After holding eight hearings, the trial court again found Chiaia was ineligible for resentencing because he acted with "malice"; he "initiated the beating by hitting or kicking Altmark"; he acted with "conscious disregard for life"; and the "prosecution has proven the elements of second degree murder beyond a reasonable doubt."  We must draw all reasonable inferences in support of these findings.  (*People v. Owens, supra*, 78 Cal.App.5th at p. 1022; *People v. Crosswhite, supra*, 101 Cal.App.4th at pp. 507-508.)  Chiaia has not shown why the trial court could not reasonably find that he was not eligible for resentencing as an actual killer or a major participant acting with reckless disregard for human life in the deadly attack. (*People v. Gutierrez-Salazar, supra*, 38 Cal.App.5th at p. 417.)

*Violating Chiaia's Right to Appear*

Chiaia contends the trial court "violated" his right to appear in the proceedings.  We disagree.

Chiaia notes that when the trial court issued its order to show cause, it stated, "Given the uncertainties in how this matter will proceed, and the logistical issues related to [his] incarceration and *how that will impact his ability to effectively participate in the process*, the court would like the opportunity to confer with the parties, before making a determination about how this matter should proceed."  (Italics added.)  Chiaia notes there is a gap in the record because, "[t]here was no conference on the logistics *on the record*."  (Italics added.)  He concludes that the court violated his right to appear in the proceedings.

But the record is incomplete.  We cannot presume error based on an incomplete record.  (*People v. Malabag* (1997) 51

13

Cal.App.4th 1419, 1427.) The "defendant has the burden of providing a record adequate to support his arguments on appeal." (*Ibid.*) He did not meet his burden. The facts about what conferences and agreements the parties and the court made on this issue should have been resolved with a settled statement. (*Ibid.*) " ' "A judgment or order of the [trial] court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . ." ' " (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435.)

Moreover, the claim that the trial court was violating Chiaia's right to appear is not shown by the court's statement. It shows the court understood his right to appear and it was proceeding to accommodate that right.

### *Other Issues*

Chiaia appears to suggest that his trial counsel acted without his consent, and that he (Chiaia) was prevented from appearing at the hearing. But these claims are made without a specific factual summary and without citations to the record. Consequently, the record is not sufficient to support them or to support an ineffective assistance claim on a direct appeal. (Cal. Rules of Court, rule 8.204(a)(2)(C); *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266; *People v. Malabag, supra,* 51 Cal.App.4th at p. 1427.) After reviewing all of Chiaia's contentions, we conclude he has not shown grounds for reversal.

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

                          GILBERT, P. J.

We concur:


        YEGAN, J.


        PERREN, J.*

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15

Thomas R. Adams, Jr., Judge

Superior Court County of Santa Barbara

_____

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.