Filed 7/12/21  P. v. Carter CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078024 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD137023) |
| LAZAIR DETERRO CARTER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Donald Ostertag and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

Lazair Deterro Carter appeals from the summary denial of his petition to vacate his first degree murder conviction under Penal Code section 1170.95.[1]  The trial court found Carter was not entitled to relief, as a matter of law, because the jury that found him guilty of murder returned a true finding on a robbery-murder special-circumstance allegation associated with the conviction.  Because Carter was not the actual killer, the special-circumstance finding meant the jury necessarily found Carter aided and abetted in the commission of the murder with an intent to kill, or aided and abetted in the commission of the robbery while acting as a major participant and with reckless indifference to human life.  (§ 190.2, subds. (c), (d).)

As we will explain, the Courts of Appeal are divided on the question of whether a jury's true finding on a felony-murder special-circumstance allegation categorically precludes resentencing under section 1170.95 where, as here, the true finding was made prior to *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).  We find ourselves persuaded by the logic of those courts that have determined a pre-*Banks* and *Clark* felony-murder special-circumstance finding does not necessarily preclude resentencing relief under section 1170.95.  Thus, we conclude the trial court erred in denying Carter's petition based solely on the fact that there was a true robbery-murder special-circumstance finding.

Nonetheless, we have conducted a case-specific examination of Carter's record of conviction and it is apparent to us that Carter, at minimum, was a major participant in the underlying robbery and acted with reckless indifference to human life, as those requirements were construed in *Banks*

---

[1]     Undesignated statutory references are to the Penal Code.

2

and *Clark*.  Therefore, the trial court properly found Carter did not make a prima facie showing that he was entitled to relief under section 1170.95.

On these grounds, we affirm the order summarily denying Carter's resentencing petition.

II

BACKGROUND

A

*Carter's Murder Conviction*

The following factual background is taken from this court's opinion in *People v. Smith* (Mar. 5, 2004, D035500) [nonpub. opn.] (*Carter I*).

Between November 7, 1997 and February 18, 1998, Carter and Marquel Dion Smith committed dozens of armed robberies of commercial establishments in the San Diego area.  (*Carter I, supra*, D035500.)  The robberies were known as the Tri-Cities robberies.  (*Ibid.*)  They differed in their specifics, but typically entailed two or three African American males wearing masks and gloves, carrying guns, taking money from a cash register, demanding access to a safe, and taking money from customers and employees.  (*Ibid.*)  The robbers frequently hit employees in the head with a gun.  (*Ibid.*)  During one robbery, a store owner named Salim Gappy grabbed a revolver and fired it several times, causing the robbers to return fire and flee.  (*Ibid.*)

On February 18, 1998, Carter and Smith committed an armed robbery of a liquor store during which the 19-year old store clerk, Adrian Garmo, was killed.  (*Carter I, supra*, D035500.)  Surveillance videotape "showed Carter wrestling with the clerk, who was trying to pull off Carter's … mask.  Smith reached over the counter and pointed a .38 caliber handgun at the clerk.  Garmo was shot and killed by a single gunshot to the chest."  (*Ibid.*)

3

According to a prosecution witness, Carter confessed to the witness that "he had been carrying a .25 caliber gun" during the fatal robbery. (*Ibid.*)

On December 20, 1999, a jury found Carter and Smith guilty of the first degree murder of Adrian Garmo (§ 187, subd. (a)) and, for both defendants, returned true findings on personal use of a firearm allegations (§ 12022.5, subd. (a)(1)) and robbery-murder special-circumstance allegations (§ 190.2, subd. (a)(17)) associated with the murder charge. (*Carter I, supra*, D035500.) The jury found the defendants guilty of the attempted murder of Salim Gappy (§§ 187, 664) and, for both defendants, returned true findings on personal use of a firearm allegations (§ 12022.5, subd. (a)(1)) associated with the attempted murder charge. (*Ibid.*) The defendants were found guilty of dozens of other crimes arising from the Tri-Cities robberies as well.[2] (*Ibid.*) The court sentenced Carter to prison for life without the possibility of parole, plus 270 years 8 months. (*Ibid.*) It sentenced Smith to prison for life without the possibility of parole, plus 206 years. (*Ibid.*)

On direct appeal, this court struck a parole revocation fine, but in all other respects affirmed the judgments. (*Carter I, supra*, D035500.) The Supreme Court denied review on May 19, 2004.

B

*Senate Bill No. 1437*

In 2018, the Legislature passed and the Governor signed Senate Bill No. 1437, effective January 1, 2019. (Stats. 2018, ch. 1015.) The law's stated

---

[2] Carter was found guilty of 11 counts of attempted robbery, 57 counts of robbery, 18 counts of assault with a firearm, and 16 counts of being a felon in possession of a firearm, among other crimes. (*Carter I, supra*, D035500.) Smith was found guilty of 8 counts of attempted robbery, 39 counts of robbery, 15 counts of assault with a firearm, and 12 counts of being a felon in possession of a firearm, among other crimes. (*Ibid.*)

purpose was "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Id.*, § 1, subd. (f).)

Senate Bill No. 1437 effectuated this goal by amending section 188, which defines malice, and section 189, which defines the degrees of murder. (Stats. 2018, ch. 1015, § 3.) Amended section 188 states: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Amended section 189 states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

Senate Bill No. 1437 also enacted section 1170.95, which provides resentencing relief to eligible defendants. Under subdivision (a), "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition" with the sentencing court to have his or her murder conviction vacated and to be resentenced on any remaining counts "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the

prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019" pursuant to Senate Bill No. 1437.

Subdivision (b) "describes where and how the petition must be filed and specifies its required content." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973.) The resentencing petition must include: "(A) A declaration by the petitioner that he or she is eligible for relief under [section 1170.95], based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b).)

Subdivision (c) discusses the trial court's prima facie review of a resentencing petition. It states as follows: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of [section 1170.95]. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

If an order to show cause issues, the court generally must "hold a hearing to determine whether to vacate the murder conviction and to recall

6

the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1)–(2).) At the hearing, the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. (*Id.*, subd. (d)(3).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*)

C

*Carter's Resentencing Petition*

On February 7, 2019, Carter filed a pro per petition to vacate his murder conviction and to be resentenced under section 1170.95. The trial court appointed legal counsel for Carter to represent him during the resentencing proceeding.

The People, represented by the district attorney, opposed Carter's petition. The People asserted: (1) Senate Bill No. 1437 was unconstitutional (an argument the People do not repeat on appeal); and (2) Carter failed to make a prima facie showing he fell within the provisions of section 1170.95. As the People explained, the jury's robbery-murder special-circumstance finding meant the jury necessarily found Carter aided and abetted in the commission of the murder with the intent to kill, or he aided and abetted in the commission of the robbery while acting as a major participant and with reckless indifference to human life. The People argued that under either scenario, Carter still could be convicted of murder under the amended versions of sections 188 and 189; thus, he could not make a prima facie showing he fell within the provisions of section 1170.95.

7

Carter, acting through counsel, filed a reply brief in support of his resentencing petition. He argued: (1) Senate Bill No. 1437 was constitutional; and (2) he made a prima facie showing he was entitled to relief. With respect to the latter argument, Carter argued the jury that convicted him in 1999 was never instructed on whether he was a major participant in the robbery or whether he acted with reckless indifference to human life according to the standards later enunciated by the Supreme Court in *Banks, supra*, 61 Cal.4th 788. He asserted there was therefore a dispute concerning whether he had "a viable petition" under section 1170.95.

The People filed a supplemental response to Carter's resentencing petition. The filing cited two recently-issued Court of Appeal decisions, *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted October 14, 2020, S264284 (*Galvan*), and *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted October 14, 2020, S264033 (*Gomez*), for the proposition that a true robbery-murder special-circumstance finding precludes resentencing relief as a matter of law.

On September 8, 2020, the trial court issued a written order summarily denying Carter's resentencing petition. The court stated it "reviewed the case file, the petition, and pleadings," and found Carter "ha[d] not made a prima facie showing that he [was] entitled to relief" under section 1170.95, subdivision (c). In particular, the court found Carter "ha[d] not shown that he could not be convicted of murder because of the changes made to Penal Code section 188 and 189 …." In support of this finding, the court relied exclusively on the jury's true robbery-murder special-circumstance finding, which, in the court's view, rendered Carter "ineligible for relief under Penal Code section 1170.95, as a matter of law."

8

III

DISCUSSION

A

*Standard of Review*

"Because we are tasked with applying the section 1170.95, subdivision (c) standard governing prima facie entitlement to relief [citation], our review is de novo. [Citation.] As with any case involving statutory interpretation, our primary goal is to ascertain and effectuate the lawmakers' intent. [Citation.] [¶] In applying the de novo standard, we accept the pleaded facts as true [citation], but evaluate those facts in light of facts readily ascertainable from the record of conviction," including our opinion in *Carter I, supra*, D035500. (*People v. Secrease* (2021) 63 Cal.App.5th 231, 244 (*Secrease*), review granted June 30, 2021, S268862; see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 333, review granted March 18, 2020, S260493 ["A court of appeal opinion, whether or not published, is part of the appellant's record of conviction."].)

B

*A True Felony-Murder Special-Circumstance Finding Made Prior to Banks and Clark Does Not Categorically Preclude Resentencing*

The issue presented in this appeal is whether the trial court erred in summarily denying Carter's resentencing petition after finding that he failed to make a prima facie showing of entitlement to relief under section 1170.95.

The People urge us to affirm the court's order on grounds that the convicting jury returned a true finding on the robbery-murder special-circumstance allegation associated with Carter's murder conviction. In order to reach a true felony-murder special-circumstance finding, a jury must find that a defendant was the actual killer, aided and abetted in the commission of the murder with an intent to kill, or aided and abetted in the commission

9

of the felony while acting as a major participant and with reckless indifference to human life.  (§ 190.2, subds. (b)–(d).)  Because these requirements are identical to the felony murder requirements under the amended version of section 189, subdivision (e), the People claim Carter cannot prove one of the three elements necessary to obtain resentencing—to wit, that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 …."  (§ 1170.95, subd. (a)(3).)

Carter argues the robbery-murder special-circumstance finding did not categorically bar him from making a prima facie showing of entitlement to relief under section 1170.95.  He notes the jury returned its true special-circumstance finding in 1999, before the issuance of *Banks, supra*, 61 Cal.4th 788, and *Clark, supra*, 63 Cal.4th 522.  In those decisions, the Supreme Court "clarified the meaning" of the special-circumstance statute (§ 190.2).  (*In re Scoggins* (2020) 9 Cal.5th 667, 671.)

As we will explain, we agree with Carter that a pre-*Banks* and *Clark* felony-murder special-circumstance finding, standing alone, does not necessarily preclude a defendant from obtaining resentencing relief under section 1170.95.

1

*Banks and Clark*

The special-circumstance statute sets forth a list of "crimes deemed sufficiently reprehensible to warrant possible punishment by death" or life imprisonment without the possibility of parole (LWOP).  (*Banks, supra*, 61 Cal.4th at p. 797, citing § 190.2, subd. (a).)  It "extends death [or LWOP] eligibility not only to killers, but also to certain aiders and abettors of first degree murder."  (*Ibid.*, citing § 190.2, subds. (c), (d).)  In the case of first degree felony murder, it states that a person who is not the actual killer may

10

nonetheless be subject to the punishment of death or LWOP if the person, "with reckless indifference to human life and as a major participant," aids and abets the crime resulting in the death of a person or persons. (§ 190.2, subd. (d).) "The statute thus imposes both a special actus reus requirement, major participation in the crime, and a specific mens rea requirement, reckless indifference to human life." (*Banks*, at p. 798.)

*Banks* considered and applied both the actus reus (major participant) and the mens rea (reckless indifference) requirements, but it focused its attention primarily on the actus reus requirement. It identified the following factors as relevant in determining whether a defendant was a major participant in a crime: what role the defendant had in planning the criminal enterprise that led to one or more deaths; what role the defendant had in supplying or using lethal weapons; what awareness the defendant had of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants; and whether the defendant was present at the scene of the killing, in a position to facilitate or prevent the actual murder, or played a particular role in the death. (*Banks, supra*, 61 Cal.4th at p. 803.) As the Supreme Court explained, "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Ibid.*)

*Clark* addressed the mens rea requirement of the special-circumstance statute. The mens rea requirement has "subjective and objective elements." (*Clark, supra*, 63 Cal.4th at p. 617.) "The subjective element is the defendant's conscious disregard of risks known to him or her," while the objective element considers "what 'a law-abiding person would observe in the

11

actor's situation.' " (*Ibid.*)  *Clark* identified the following factors, many of which overlap with the *Banks* factors, as pertinent to whether a defendant acted with reckless indifference to human life:  the defendant's knowledge that weapons would be used and/or his personal use of weapons; the defendant's physical presence at the scene and his opportunity to restrain the killer or aid the victim; the duration of the felony; the defendant's knowledge of his accomplice's propensity to kill; and the defendant's efforts to minimize the risk of violence in the commission of the felony.  (*Id.*, at pp. 618–623.)

2

*Application of Banks and Clark in Section 1170.95 Proceedings*

"In the years immediately following the decisions in *Banks* and *Clark*, courts applied the standards enunciated in those cases in the setting of habeas corpus [citation], and in section 1170.95 resentencing proceedings that had been preceded by a successful collateral attack on a felony-murder special-circumstance finding based on *Banks* and *Clark* [citation]."  (*Secrease, supra*, 63 Cal.App.5th at p. 252, review granted.)  Since then, the *Banks* and *Clark* standards have been considered in another procedural context— namely, in section 1170.95 resentencing proceedings that have *not* been preceded by a successful collateral attack on a felony-murder special-circumstance finding.  In such cases, the Courts of Appeal have been starkly divided on whether a pre-*Banks* and *Clark* felony-murder special-circumstance finding categorically bars a defendant from making a prima facie showing that he or she is entitled to resentencing relief under section 1170.95.

"[S]ome courts now hold a section 1170.95 petitioner must always mount a successful collateral attack on a prior felony-murder special-circumstance finding against him—no matter when it was made—and until

he does so, he cannot plead a prima facie case under section 1170.95, subdivision (c) as a matter of law."[3] (*Secrease, supra*, 63 Cal.App.5th at p. 252, review granted.) "The courts so holding point out that major participation and reckless disregard of human life have always been required elements of a special circumstance finding under section 190.2, subdivisions (a)(17) and (d). And because revisiting those issues in a section 1170.95 proceeding, ' "in effect," ' amounts to an attack on a valid special circumstance finding, these courts take the view that a defendant in [Carter's] position must first invalidate the special circumstance finding before he may seek section 1170.95 relief. [Citations.] In this view, it is not the changes to sections 188 and 189 that potentially render such a defendant's murder conviction invalid under current law; it is the *Banks* and *Clark* decisions that have that effect, which is why the remedy of habeas corpus must be sought in the first instance." (*Secrease*, at pp. 252–253.)

"Other courts do not impose a requirement that a section 1170.95 petitioner who seeks resentencing in the face of a prior jury finding under section 190.2, subdivision (a)(17) must first obtain habeas corpus relief, and hold that he may opt to pursue relief by attacking his murder conviction—not his special circumstance finding—on the ground that, under current law as

---

[3]     See *Gomez, supra*, 52 Cal.App.5th at p. 17, review granted; *Galvan, supra*, 52 Cal.App.5th at p. 1142, review granted; *People v. Jones* (2020) 56 Cal.App.5th 474, 483–484, review granted January 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 457; *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted November 18, 2020, S264978 (*Murillo*); *People v. Nunez* (2020) 57 Cal.App.5th 78, 95–96, review granted January 13, 2021, S265918 (*Nunez*); *People v. Simmons* (2021) 65 Cal.App.5th 739; cf. *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419–420 (rejecting claimed entitlement to § 1170.95 relief raised in appeal of murder conviction on the ground jury's special-circumstance finding rendered appellant ineligible for resentencing as a matter of law).

revised by Senate Bill [No.] 1437, he could no longer be convicted of murder."[4] (*Secrease, supra*, 63 Cal.App.5th at p. 253, review granted.) "According to these courts, if the petitioner obtains vacatur of a prior special circumstance finding in a section 1170.95 proceeding, that is because the statute expressly requires it as a 'collateral consequence' of the resentencing relief to which a successful section 1170.95 petitioner is entitled. [Citation.] [¶] These courts see no basis to graft what is, in effect, an exhaustion requirement onto section 1170.95, thereby forcing petitioners with felony-murder special-circumstances findings to obtain habeas relief first, before seeking section 1170.95 resentencing. In their view, because *Banks* and *Clark* 'construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute' [citation], it is not appropriate to give a pre-*Banks* and *Clark* felony-murder special-circumstance finding preclusive effect. As [one] panel … explained, '[i]t would be inappropriate to "treat[ ] [such] findings as if they resolved key disputed facts" when the jury did not have the same questions before them.' " (*Secrease*, at pp. 253–254.)

### 3

*A Collateral Attack on a True Felony-Murder Special-Circumstance Finding Is Not a Prerequisite to Relief Under Section 1170.95*

The Courts of Appeal have subjected the issue at hand to vigorous debate and devoted countless pages of discussion to the subject. The issue is

---

4    See *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179–1180, review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, 93–94, review granted July 22, 2020, S262835 (*Smith*); *People v. York* (2020) 54 Cal.App.5th 250, 259–261, review granted November 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, 956–958, review granted April 28, 2021, S267802 (*Harris*); *Secrease, supra*, 63 Cal.App.5th at pp. 244–245, review granted; *People v. Gonzalez* (2021) 65 Cal.App.5th 420.

currently under review by the Supreme Court as well, so we will soon have clarity one way or the other. (*People v. Strong*, review granted Mar. 10, 2021, S266606 ["This case presents the following issue: Does a felony-murder special circumstance finding (Pen. Code, § 190.2, subd. (a)(17)) made before *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 preclude a defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95?"].) Given this context, we need not add to the conversation with further extensive argument or analysis.

It will suffice for us to state that we are persuaded by the logic of the courts that have concluded pre-*Banks* and *Clark* felony-murder special-circumstance findings do not categorically preclude defendants from obtaining resentencing relief under section 1170.95.[5] We adopt the pertinent analyses of those courts and incorporate them herein. Thus, we conclude the trial court in the present case erred in summarily denying Carter's resentencing petition based solely on the existence of a true felony-murder special-circumstance finding.

## C

*Carter's Special-Circumstance Finding Remains Valid Under Banks and Clark, Thus Precluding a Prima Facie Showing of Entitlement to Relief*

Although a pre-*Banks* and *Clark* felony-murder special-circumstance finding does not *automatically* preclude resentencing relief, that fact alone

---

[5]    We acknowledge a panel of this court has reached the opposite conclusion. (*Gomez, supra*, 52 Cal.App.5th at p. 17, review granted.) The trial court justifiably cited to and applied this decision in its order denying Carter's resentencing petition. However, the arguments that have been proffered and adopted by numerous other courts subsequent to this court's prior decision are persuasive to the members of this panel, and they convince us that a pre-*Banks* and *Clark* felony-murder special-circumstance finding is not a categorical bar to relief under section 1170.95.

does not require us to reverse and remand the matter for the trial court to issue an order to show cause. Rather, for the reasons stated in *Secrease*, we believe we must conduct an individualized review of Carter's record of conviction to determine whether his special-circumstance finding satisfies the *Banks* and *Clark* standards. (*Secrease, supra*, 63 Cal.App.5th at p. 255, review granted ["The most natural reading of section 1170.95 … is that where a petitioner facing a felony-murder special-circumstance finding has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review— by any court, at the trial or appellate level—section 1170.95 courts have an obligation to undertake such an analysis at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of the statute. And on appeal from the denial of a section 1170.95 petition for failure to state a prima facie case for relief in such a situation, we have an obligation to do so as well."].)[6]

---

[6]  See also *Harris, supra*, 60 Cal.App.5th at p. 958, review granted [courts can determine resentencing eligibility "after reviewing the available record of conviction in light of the *Banks* and *Clark* factors"]; *Nunez, supra*, 57 Cal.App.5th at pp. 97–98 (conc. opn. of Ashmann-Gerst, J.) (true special-circumstance finding precluded resentencing because it satisfied *Banks* and *Clark*); accord *Murillo, supra*, 54 Cal.App.5th at pp. 169–173, review granted (resentencing was properly denied because the "record of conviction establishe[d] as a matter of law that the jury's special circumstance finding [was] valid under the standards established by *Banks* and *Clark*"); *People v. Law* (2020) 48 Cal.App.5th 811, 825–826, review granted July 8, 2020, S262490 (resentencing denial based solely on pre-*Banks* and *Clark* special-circumstance finding was error, but it was "harmless" because "the record" showed the defendant was a major participant who acted with reckless indifference); but see *Smith, supra*, 49 Cal.App.5th at pp. 95–96, review granted (it is error for an appellate court to "conduct [its] own assessment of the trial evidence to determine whether [the defendant] was a major participant and acted with reckless indifference to human life").

Our review of Carter's record of conviction discloses the robbery-murder special-circumstance finding in this case clearly satisfied the *Banks* and *Clark* standards. As discussed in *Carter I, supra*, D035500, Carter was physically present at the liquor store where Garmo was shot and killed. Indeed, he personally wrestled with Garmo moments before his death. Carter surely was aware of the substantial risk of danger associated with the robbery, given that he had already perpetrated—and was later found guilty of—numerous robberies during which he and/or his accomplices committed violent acts against others. One prior robbery ended with an exchange of gunfire—an incident for which Carter was found guilty of attempted murder and found to have personally used a firearm. Further, the jury found Carter personally used a firearm during the robbery that left Garmo dead. Given these circumstances, all of which are reflected in the record of conviction, it is apparent Carter was a major participant who acted with reckless indifference to human life, as those terms were clarified in *Banks* and *Clark*. Indeed, Carter does not even argue the record of conviction, to the extent it may properly be considered, compels a different result.

Because Carter was a major participant in the robbery who acted with reckless indifference to human life, he did not make a prima facie showing of entitlement to relief under section 1170.95, as a matter of law.

17

## IV

## DISPOSITION

The order denying the resentencing petition is affirmed.

McCONNELL, P. J.

WE CONCUR:

HALLER, J.

AARON, J.