Filed 7/22/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SERGIO ROJAS ARIAS,<br><br>    Defendant and Appellant. | D077778<br><br><br>(Super. Ct. No. RIF111846) |

APPEAL from an order of the Superior Court of Riverside, Samuel Diaz, Jr., Judge.  Reversed and remanded.

Martin Kassman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

Sergio Rojas Arias appeals from the summary denial of his petition to vacate his first degree murder conviction under Penal Code section 1170.95.[1] The trial court found Arias was not entitled to relief, as a matter of law, because the jury that found him guilty of murder returned a true finding on a robbery-murder special-circumstance allegation associated with the conviction. Because Arias was not the actual killer, the special-circumstance finding meant the jury necessarily found Arias aided and abetted in the commission of the murder with an intent to kill, or aided and abetted in the commission of the robbery while acting as a major participant and with reckless indifference to human life. (§ 190.2, subds. (c), (d).)

As we will explain, the Courts of Appeal are divided on the question of whether a jury's true finding on a felony-murder special-circumstance allegation categorically precludes resentencing under section 1170.95 where, as here, the true finding was made prior to *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). We find ourselves persuaded by the logic of those courts that have determined a pre-*Banks* and *Clark* felony-murder special-circumstance finding does not necessarily preclude resentencing under section 1170.95. Thus, we conclude the trial court erred in denying Arias's petition based solely on the existence of the true robbery-murder special-circumstance finding. Further, given the limited record of conviction before us, we are unable to conclude the special-circumstance finding satisfied the standards set forth in *Banks* and *Clark*.

---

[1]     Subsequent undesignated statutory references are to the Penal Code.

Therefore, we reverse the order denying Arias's petition and remand the matter for the trial court to determine, based on the entire record of conviction, whether Arias made a prima facie showing of entitlement to relief.

II

BACKGROUND

A

*Arias's Murder Conviction*

The following factual background is taken from this court's opinion in *People v. Arias* (Mar. 11, 2011, D058086) [nonpub. opn.] (*Arias I*).

"**Prosecution Evidence**

"Eighteen year old Jessica De La Torre lived in a house in Ontario with her parents and her cousin. Shortly before 3:00 p.m. on August 15, 2003, a neighbor called De La Torre's father and told him the house was on fire. De La Torre was not in the house. Her cousin last saw her there sometime between 8:00 and 9:00 that morning.

"An arson investigator determined separate fires had intentionally been set in three of the bedrooms. The fires were started by placing open flames against the bedding or mattresses. Because of the flame retardant materials used in the mattresses and other factors, the fires could have been burning for several hours before they were discovered.

"Other than by firefighters, there were no signs of forced entry into the home. However, several items were missing from the home, including a black Toyota Avalon that had been parked in the garage, wrenches from a set De La Torre's cousin kept in his bedroom closet, a stereo and speaker set De La Torre kept in her room, and another stereo and speaker set kept in an entertainment center in the living room.

"In addition, many items in the home were out of place. In the garage, the Avalon's lower dash cover was lying on the garage floor and the lower dash frame was propped up against the wall.

3

An extension cord, flashlight and tools were lying on the floor next to some metal shavings.  A wrench from the set De La Torre's cousin kept in his closet was on a bench.

"In the living room, a pair of De La Torre's panties was on the sofa.  A drinking glass and one of De La Torre's socks, which appeared to have blood on it, were on the floor. Testing of the drinking glass did not produce a DNA profile.

"In the master bathroom, a bloody undershirt was in the sink. Testing of the blood on the undershirt produced a DNA profile that matched De La Torre's DNA profile.

"In the master bedroom, De La Torre's purse, wallet, driver's license and other items from her wallet were lying on the floor. Her ATM card to a bank account containing approximately $7,000 was missing.  Another pair of De La Torre's panties was on the loveseat and a drinking glass was on the floor.  Testing of the drinking glass produced a partial DNA profile.  [Defendant Jesus] Penuelas, with whom De La Torre was acquainted, was a possible donor.

"In De La Torre's bedroom, two kitchen knives were lying on the dresser next to her bed.  There was blood on the walls and there were clothes on the floor that appeared to have blood on them. DNA testing of the blood on the walls produced a DNA profile that matched De La Torre's DNA profile.

"Further investigation revealed that, at approximately 11:00 a.m. the same day, a telephone call was made to the De La Torre home from a payphone in Upland, approximately 5.2 miles away.  At approximately 11:02 a.m., a telephone call was made from the De La Torre home to the payphone using a call return feature.  A forensics investigator was not able to obtain any identifiable fingerprints from the payphone booth.

"Sometime between 11:39 and 11:49 a.m., Arias, who was acquainted with Penuelas, made eight attempts to withdraw money from De La Torre's account using an ATM at a bank on North Euclid Avenue in Ontario.  The bank is approximately three miles from De La Torre's home, and approximately three

4

miles from the payphone where the earlier call to the De La Torre's home was made. A bicycle was visible in the background of surveillance photos showing Arias's attempts.

"Arias's first five attempts to withdraw money failed because Arias used an incorrect personal identification number (PIN). The sixth attempt failed because Arias had made too many attempts to access the account with an incorrect PIN. The seventh and eight attempts failed because the bank had blocked the account.

"At approximately 12:28 p.m., a telephone call was made from the payphone in Upland to the De La Torre home.

"Sometime between noon and 1:00 p.m., a 13–year old boy saw a white truck and a black car, possibly a Honda, pull up and stop by a dirt road in front of his home. The boy thought there were two people in the white truck, but was not positive. The driver of the white truck, a Hispanic male, walked up to the driver of the black car, also a Hispanic male. The drivers spoke for two minutes. Then, the driver of the white truck returned to his vehicle. The black car drove onto the dirt road into the hills above Rubidoux and the truck followed.

"Around 1:30 p.m., a 15–year old boy found what turned out to be De La Torre's body in the hills above Rubidoux. She was wearing only a bra, her feet were bound with a belt, and she had tire tracks across her body. DNA testing of nail clippings taken from fingers on both hands showed she had no foreign DNA under her fingernails.

"At 3:06 p.m., Penuelas attempted to withdraw money from De La Torre's account using an ATM at a bank on North Mountain Avenue in Ontario. This attempt failed because the account was still blocked. At 3:19 p.m., Penuelas attempted to check the account balance and to withdraw funds from the account using the same ATM Arias had tried earlier. Both attempts failed because the account was blocked.

"Several days later, a sheriff's detective located the Avalon approximately six and a half miles away from where De La

5

Torre's body was found. The dashboard was damaged and there were some tools, a chunk of metal, and some metal shavings on the floorboard suggesting the car had been hotwired. There was a comforter in the trunk that appeared to have blood on it, and there was human hair and human tissue on the undercarriage. DNA evidence collected from the steering wheel contained a mixture of DNA from three individuals. Arias was excluded as a contributor to the DNA mixture. Penuelas could not be excluded as a contributor.

"An Ontario police detective found the stereo and speaker taken from the De La Torre's living room and the speakers taken from De La Torre's bedroom in the living room of a residence shared by Arias, [Defendant Aaron] Lozada, and another person. The detective found the stereo taken from De La Torre's bedroom in a hall cabinet in the residence. Photographs taken of Arias after his arrest showed he had a bruise on his shoulder. He had no other injuries.

"Ontario police detectives found undershirts in Penuelas's residence the same size, color, and brand as the one found in De La Torre's master bathroom. Detectives also found a distinctive blue bicycle in Penuelas's residence. The bicycle was 'very similar' to the bicycle visible in the background of the surveillance photographs showing Arias's attempt to use De La Torre's ATM card.

"After arresting Penuelas, police detectives conducted K–9 scent tracking of Penuelas using scent pads collected from the belt wrapped around De La Torre's ankles. A detective walked Penuelas along a meandering route through the Ontario Police Department parking lot to a picnic table at an adjacent building, where they sat down. Only knowing the general area in which Penuelas started walking, a K–9 handler presented the scent pads to the tracking dog and commanded it to search for the scent trail. The dog picked up the scent trail and followed it along the exact same route the detective and Penuelas took to the picnic table. The dog jumped up, put its paws on the table next to Penuelas, and put its nose to Penuelas, indicating it had found the target of the search. Detectives did not conduct K–9 scent tracking of Arias.

"An autopsy showed De La Torre suffered over 100 distinct injuries, most of which occurred before she died. The injuries included multiple knife cuts, blunt force trauma to her genitals, a severed ear, a bruised liver, a torn lung, numerous broken bones, and numerous lacerations, abrasions, and bruises over her entire body. She died from being run over by a car one or more times, which caused her chest to collapse and prevented her from being able to breathe. There was no evidence she was unconscious for any significant period before she died.

"*Defense Evidence*

"A neighbor told a police officer she saw De La Torre walking down the street toward the De La Torre home between 11:00 and 11:30 a.m. on the day of the murder. She was wearing a white crop top and loose peg leg pants. She was alone and her demeanor was normal.

"A male friend of De La Torre's told police De La Torre called him the night before her murder and asked him for a ride to the ATM the next day so she could get some money. He told her he could not take her that day, but would get back to her. He tried calling her the afternoon of her murder, but he was not able to reach her.

"A forensic nurse collected hair, blood, and DNA evidence from Arias. She recorded his height as five feet tall and his weight as 160 pounds. De La Torre's ATM card was never recovered. Testing of vaginal and rectal swabs taken from De La Torre during the autopsy did not show the presence of sperm. Toxicology testing of De La Torre's blood showed the presence of marijuana and 3.6 milligrams of a drug commonly referred to as the date rape drug."

(*Arias I, supra*, D058086.)

Arias was prosecuted for the first degree murder of De La Torre "under three similar theories: (1) Arias aided and abetted or conspired to commit a felony that resulted in a death, (2) Arias aided and abetted a robbery and the murder was a natural and probable consequence of the robbery, and (3) Arias

7

conspired to commit a robbery and the murder was a natural and probable consequence of the robbery." (*Arias I*, *supra*, D058086.) After a trial, the jury convicted Arias of the first degree murder of De La Torre.[2] (*Ibid.*) It found true a special-circumstance allegation that the murder was committed while Arias was engaged in the commission of a robbery pursuant to section 190.2, subdivision (a)(17)(A). [3] (*Ibid.*) The jury fixed the penalty for Arias's conviction as imprisonment for life without the possibility of parole (LWOP) and the trial court sentenced Arias accordingly. (*Ibid.*)

On direct appeal, this court affirmed the judgment. In our opinion affirming the judgment, we rejected Arias's claim that insufficient evidence supported the robbery-murder special-circumstance finding. (*Arias I*, *supra*, D058086.) The Supreme Court denied review on June 22, 2011.

B

*Senate Bill No. 1437*

In 2018, the Legislature passed and the Governor signed Senate Bill No. 1437, effective January 1, 2019. (Stats. 2018, ch. 1015.) The law's stated purpose was "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Id.*, § 1, subd. (f).)

---

[2] A separate jury found codefendant Penuelas guilty of De La Torre's murder and fixed his penalty as death. (*Arias I, supra*, D058086.)

[3] The trial court granted a judgment of acquittal on a kidnapping-murder special-circumstance allegation (§ 190.2, subd. (a)(17)(B)) and a special-circumstance allegation that the murder was intentional and involved the infliction of torture (*id.*, subd. (a)(18)). (*Arias I, supra*, D058086.)

Senate Bill No. 1437 effectuated this goal by amending section 188, which defines malice, and section 189, which defines the degrees of murder. (Stats. 2018, ch. 1015, § 3.)  Amended section 188 states:  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  Amended section 189 states:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e).)

Senate Bill No. 1437 also enacted section 1170.95, which provides resentencing relief to eligible defendants.  Under subdivision (a), "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition" with the sentencing court to have his or her murder conviction vacated and to be resentenced on any remaining counts "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted

9

of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019" pursuant to Senate Bill No. 1437.

Subdivision (b) "describes where and how the petition must be filed and specifies its required content." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973.) The resentencing petition must include: "(A) A declaration by the petitioner that he or she is eligible for relief under [section 1170.95], based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b).)

Subdivision (c) discusses the trial court's prima facie review of a resentencing petition. It states as follows: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of [section 1170.95]. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

If an order to show cause issues, the court generally must "hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1)–(2).) At the hearing, the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is ineligible

10

for resentencing. (*Id.*, subd. (d)(3).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*)

C

*Arias's Resentencing Petition*

On August 15, 2019, Arias filed a pro per petition to vacate his murder conviction and to be resentenced under section 1170.95. On his petition, he marked checkboxes next to the following pre-printed statements: (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or under the natural and probable consequences doctrine; (2) at trial, he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; (3) he could not now be convicted of first or second degree murder because of changes to Penal Code section 188 and 189, effective January 1, 2019; and (4) he requested the appointment of legal counsel. The trial court appointed legal counsel for Arias, as requested.

The People filed a response to Arias's petition. The People asserted: (1) Senate Bill No. 1437 was unconstitutional (an argument not repeated on appeal); and (2) "the court should summarily deny the petition because a review of readily available records contained in the court's judicial access database demonstrates the jury found true a robbery-murder special circumstance that would have required, at minimum, a finding of intent to kill or that [Arias] was a major participant who acted with reckless indifference, and the court of appeal expressly found sufficient evidence that petitioner was a major participant with reckless indifference." (Bolding omitted.)

Arias submitted a pro per objection to the People's response. He asserted the People were "attempt[ing] to violate [his] … due process rights with an excuse to deny [his] petition[.]" He contended he "never cause[d] anyones [sic] death and never knew of any death until law enforcement charged … that a death occurred [and] arrested everyone for … one idiots [sic] random act[.]"

Arias, acting through counsel, also filed a reply brief in support of his resentencing petition. He argued Senate Bill No. 1437 was constitutional, but did not address the People's claim pertaining to the robbery-murder special-circumstance finding.

At the hearing on Arias's resentencing petition, the People argued as follows: "This defendant, Mr. Arias, was convicted of murder with a robbery murder special circumstance found true. … [¶] … [T]he jury had to find that he was a major participant acting with reckless indifference in order to find the special circumstance true. And in the 2011 opinion, upholding the conviction and the judgment, the Court of Appeal[] specifically found sufficient evidence of major participant with reckless indifference. [¶] … CALCRIM 703 was given [and] required the jury to expressly find either intent to kill or major participant with reckless indifference. Either one of those are disqualifiers. [¶] Because those findings have already been made … the defendant is not eligible for relief."

In response, Arias's appointed counsel stated he "stipulate[d] to opposing counsel's statement of the facts and procedural history," but took "issue with his interpretation of the law."

Without elaboration, the trial court summarily denied Arias's petition "based upon the stipulation by both parties of the facts and the procedures that were conducted before" the resentencing hearing.

12

III

DISCUSSION

A

*Standard of Review*

"Because we are tasked with applying the section 1170.95, subdivision (c) standard governing prima facie entitlement to relief [citation], our review is de novo. [Citation.] As with any case involving statutory interpretation, our primary goal is to ascertain and effectuate the lawmakers' intent. [Citation.] [¶] In applying the de novo standard, we accept the pleaded facts as true [citation], but evaluate those facts in light of facts readily ascertainable from the record of conviction," including our opinion in *Arias I, supra*, D058086. (*People v. Secrease* (2021) 63 Cal.App.5th 231, 244 (*Secrease*), review granted June 30, 2021, S268862; see *People v. Verdugo* (2020) 44 Cal.App.5th 320, review granted March 18, 2020, S260493 ["A court of appeal opinion, whether or not published, is part of the appellant's record of conviction."].)

B

*A True Felony-Murder Special-Circumstance Finding Made Prior to Banks and Clark Does Not Categorically Preclude Resentencing*

The issue presented in this appeal is whether the trial court erred in summarily denying Arias's resentencing petition after finding that he failed to make a prima facie showing of entitlement to relief under section 1170.95.

The People urge us to affirm the court's order on grounds that the convicting jury returned a true finding on the robbery-murder special-circumstance allegation associated with Arias's murder conviction. In order to reach a true felony-murder special-circumstance finding, a jury must find that a defendant was the actual killer, aided and abetted in the commission of the murder with an intent to kill, or aided and abetted in the commission

13

of the felony while acting as a major participant and with reckless indifference to human life. (§ 190.2, subds. (b)–(d).) Because these requirements are identical to the felony murder requirements under the amended version of section 189, subdivision (e), the People claim Arias cannot prove one of the three elements necessary to obtain resentencing—to wit, that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 …." (§ 1170.95, subd. (c).)

Arias argues the robbery-murder special-circumstance finding did not categorically bar him from making a prima facie showing of entitlement to relief under section 1170.95. He notes the jury returned its true special-circumstance finding in 2008, before the issuance of *Banks, supra*, 61 Cal.4th 788, and *Clark, supra*, 63 Cal.4th 522. In those decisions, the Supreme Court "clarified the meaning" of the special-circumstance statute (§ 190.2). (*In re Scoggins* (2020) 9 Cal.5th 667, 671.)

As we will explain, we agree with Arias that a pre-*Banks* and *Clark* felony-murder special-circumstance finding, standing alone, does not necessarily preclude a defendant from obtaining resentencing relief under section 1170.95.

1

*Banks and Clark*

The special-circumstance statute sets forth a list of "crimes deemed sufficiently reprehensible to warrant possible punishment by death" or LWOP. (*Banks, supra*, 61 Cal.4th at p. 797, citing § 190.2, subd. (a).) It "extends death [or LWOP] eligibility not only to killers, but also to certain aiders and abettors of first degree murder." (*Ibid.*, citing § 190.2, subds. (c), (d).) In the case of first degree felony murder, it states that a person who is not the actual killer may nonetheless be subject to the punishment of death

14

or LWOP if the person, "with reckless indifference to human life and as a major participant," aids and abets the crime resulting in the death of a person. (§ 190.2, subd. (d).) "The statute thus imposes both a special actus reus requirement, major participation in the crime, and a specific mens rea requirement, reckless indifference to human life." (*Banks*, at p. 798.)

*Banks* considered and applied both the actus reus (major participant) and the mens rea (reckless indifference) requirements, but it focused its attention primarily on the actus reus requirement. It identified the following factors as relevant in determining whether a defendant was a major participant in a crime: what role the defendant had in planning the criminal enterprise that led to one or more deaths; what role the defendant had in supplying or using lethal weapons; what awareness the defendant had of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants; and whether the defendant was present at the scene of the killing, in a position to facilitate or prevent the actual murder, or played a particular role in the death. (*Banks, supra*, 61 Cal.4th at p. 803.) As the Supreme Court explained, "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Ibid.*)

*Clark* addressed the mens rea requirement of the special-circumstance statute. The mens rea requirement has "subjective and objective elements." (*Clark, supra*, 63 Cal.4th at p. 617.) "The subjective element is the defendant's conscious disregard of risks known to him or her," while the objective element considers "what 'a law-abiding person would observe in the actor's situation.' " (*Ibid.*) *Clark* identified the following factors, many of

15

which overlap with the *Banks* factors, as pertinent to whether a defendant acted with reckless indifference to human life:  the defendant's knowledge that weapons would be used and/or his personal use of weapons; the defendant's physical presence at the scene and his opportunity to restrain the killer or aid the victim; the duration of the felony; the defendant's knowledge of his accomplice's propensity to kill; and the defendant's efforts to minimize the risk of violence in the commission of the felony.  (*Id.* at pp. 618–623.)

2

*Application of Banks and Clark in Section 1170.95 Proceedings*

"In the years immediately following the decisions in *Banks* and *Clark*, courts applied the standards enunciated in those cases in the setting of habeas corpus [citation], and in section 1170.95 resentencing proceedings that had been preceded by a successful collateral attack on a felony-murder special-circumstance finding based on *Banks* and *Clark* [citation]."  (*Secrease, supra*, 63 Cal.App.5th at p. 252, review granted.)  Since then, the *Banks* and *Clark* standards have been considered in another procedural context— namely, in section 1170.95 resentencing proceedings that have *not* been preceded by a successful collateral attack on a felony-murder special-circumstance finding.  In such cases, the Courts of Appeal have been starkly divided on whether a pre-*Banks* and *Clark* felony-murder special-circumstance finding categorically bars a defendant from making a prima facie showing that he or she is entitled to relief under section 1170.95.

"[S]ome courts now hold a section 1170.95 petitioner must always mount a successful collateral attack on a prior felony-murder special-circumstance finding against him—no matter when it was made—and until he does so, he cannot plead a prima facie case under section 1170.95,

subdivision (c) as a matter of law."[4] (*Secrease, supra*, 63 Cal.App.5th at p. 252, review granted.) "The courts so holding point out that major participation and reckless disregard of human life have always been required elements of a special circumstance finding under section 190.2, subdivisions (a)(17) and (d). And because revisiting those issues in a section 1170.95 proceeding, ' "in effect," ' amounts to an attack on a valid special circumstance finding, these courts take the view that a defendant in [Arias's] position must first invalidate the special circumstance finding before he may seek section 1170.95 relief. [Citations.] In this view, it is not the changes to sections 188 and 189 that potentially render such a defendant's murder conviction invalid under current law; it is the *Banks* and *Clark* decisions that have that effect, which is why the remedy of habeas corpus must be sought in the first instance." (*Id.* at pp. 252–253.)

"Other courts do not impose a requirement that a section 1170.95 petitioner who seeks resentencing in the face of a prior jury finding under section 190.2, subdivision (a)(17) must first obtain habeas relief, and hold that he may opt to pursue relief by attacking his murder conviction—not his special circumstance finding—on the ground that, under current law as

---

4       See *People v. Gomez* (2020) 52 Cal.App.5th 1, 17, review granted October 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted October 14, 2020, S264284; *People v. Jones* (2020) 56 Cal.App.5th 474, 483–484, review granted January 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 457; *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted November 18, 2020, S264978 (*Murillo*); *People v. Nunez* (2020) 57 Cal.App.5th 78, 95–96, review granted January 13, 2021, S265918 (*Nunez*); *People v. Simmons* (2021) 65 Cal.App.5th 739; cf. *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419–420 [rejecting claimed entitlement to § 1170.95 relief raised in appeal of murder conviction on the ground jury's special-circumstance finding rendered appellant ineligible for resentencing as a matter of law].)

revised by Senate Bill 1437, he could no longer be convicted of murder."[5] (*Secrease, supra*, 63 Cal.App.5th at p. 253, review granted.) "According to these courts, if the petitioner obtains vacatur of a prior special circumstance finding in a section 1170.95 proceeding, that is because the statute expressly requires it as a 'collateral consequence' of the resentencing relief to which a successful section 1170.95 petitioner is entitled. [Citation.] [¶] These courts see no basis to graft what is, in effect, an exhaustion requirement onto section 1170.95, thereby forcing petitioners with felony-murder special-circumstances findings to obtain habeas relief first, before seeking section 1170.95 resentencing. In their view, because *Banks* and *Clark* 'construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute' [citation], it is not appropriate to give a pre-*Banks* and *Clark* felony-murder special-circumstance finding preclusive effect. As [one] panel … explained, '[i]t would be inappropriate to "treat[ ] [such] findings as if they resolved key disputed facts" when the jury did not have the same questions before them.' " (*Id.* at pp. 253–254.)

---

5    See *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179–1180, review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, 93–94, review granted July 22, 2020, S262835 (*Smith*); *People v. York* (2020) 54 Cal.App.5th 250, 259–261, review granted November 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, 956–958, review granted April 28, 2021, S267802 (*Harris*); *Secrease, supra*, 63 Cal.App.5th at pp. 249–254, review granted; *People v. Gonzalez* (2021) 65 Cal.App.5th 420; *People v. Pineda* (July 19, 2021, H047709) __ Cal.App.5th __, __ [2021 Cal. App. LEXIS 586, at pp. *9–*10] (*Pineda*).)

*A Collateral Attack on a True Felony-Murder Special-
Circumstance Finding Is Not a Prerequisite to Relief Under Section 1170.95*

The Courts of Appeal have subjected the issue at hand to vigorous debate and devoted countless pages of discussion to the subject. The issue is currently under review by the Supreme Court as well, so we will soon have clarity one way or the other. (*People v. Strong*, review granted Mar. 10, 2021, S266606 ["This case presents the following issue: Does a felony-murder special circumstance finding (Pen. Code, § 190.2, subd. (a)(17)) made before *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 preclude a defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95?"].) Given this context, we need not add to the conversation with further extensive argument or analysis.

It will suffice for us to state that we are persuaded by the logic of the courts that have concluded pre-*Banks* and *Clark* felony-murder special-circumstance findings do not categorically preclude defendants from obtaining resentencing relief under section 1170.95.[6] We adopt the pertinent analyses of those courts and incorporate them herein. Thus, we conclude the trial court in the present case erred to the extent it summarily denied Arias's resentencing petition based solely on the existence of a true felony-murder special-circumstance finding.

---

[6] We acknowledge a panel of this court has reached the opposite conclusion. (*Gomez, supra*, 52 Cal.App.5th at p. 17, review granted.) However, the arguments that have been proffered and adopted by numerous other courts subsequent to this court's prior decision are persuasive to the members of this panel, and they convince us that a pre-*Banks* and *Clark* felony-murder special-circumstance finding is not a categorical bar to relief under section 1170.95.

## C

### *The Limited Record of Conviction Before Us Does Not Foreclose Resentencing Relief as a Matter of Law*

Although a pre-*Banks* and *Clark* felony-murder special-circumstance finding does not *automatically* preclude resentencing relief, that fact alone does not require us to reverse and remand the matter for the trial court to issue an order to show cause. Rather, for the reasons stated in *Secrease*, we believe we must conduct an individualized review of Arias's record of conviction to determine whether his special-circumstance finding satisfies the *Banks* and *Clark* standards. (*Secrease, supra*, 63 Cal.App.5th at p. 255, review granted ["The most natural reading of section 1170.95 … is that where a petitioner facing a felony-murder special-circumstance finding has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review— by any court, at the trial or appellate level—section 1170.95 courts have an obligation to undertake such an analysis at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of the statute. And on appeal from the denial of a section 1170.95 petition for failure to state a prima facie case for relief in such a situation, we have an obligation to do so as well."]; see *Pineda, supra*, __ Cal.App.5th at pp. __ [2021 Cal. App. LEXIS 586, at pp. *9–*10] [following *Secrease* and requiring a judicial determination

20

concerning whether the petitioner's conduct was proscribed by the special-circumstance statute as construed in *Banks* and *Clark*].)[7]

The limited record of conviction before us does not establish that the robbery-murder special-circumstance finding satisfies the *Banks* and *Clark* standards. In our opinion affirming Arias's judgment of conviction, we determined there was sufficient evidence to support the true robbery-murder special-circumstance finding. (*Arias I*, *supra*, D058086.) We explained the jury "could reasonably infer from the evidence that Arias helped Penuelas obtain De La Torre's PIN, which was necessary to access De La Torre's bank account—the chief objective of the robbery," and "Arias's attempts to access De La Torre's account inferably provided Penuelas time to put De La Torre and the stereo and speakers stolen from her home into the Avalon, and to set fire to the crime scene to destroy evidence." (*Ibid*.) Thus, we concluded there was "substantial evidence Arias was a major participant in the robbery." (*Ibid*.) Further, we determined "a jury could reasonably infer Arias was subjectively aware his participation in the robbery involved a grave risk of

_____

[7] See also *Harris, supra*, 60 Cal.App.5th at p. 958 [courts can determine resentencing eligibility "after reviewing the available record of conviction in light of the *Banks* and *Clark* factors"]; *Nunez, supra*, 57 Cal.App.5th at pp. 97–98 (conc. opn. of Ashmann-Gerst, J.) [true special-circumstance finding precluded resentencing because it satisfied *Banks* and *Clark*]; accord *Murillo, supra*, 54 Cal.App.5th at pp. 169–173 [resentencing was properly denied because "record of conviction establishe[d] as a matter of law that the jury's special circumstance finding [was] valid under the standards established by *Banks* and *Clark*"]; *People v. Law* (2020) 48 Cal.App.5th 811, 825–826 [resentencing denial based solely on pre-*Banks* and *Clark* special-circumstance finding was error, but "harmless" because "the record" showed defendant was a major participant who acted with reckless indifference]; but see *Smith, supra*, 49 Cal.App.5th at pp. 95–96 [error for appellate court to "conduct [its] own assessment of the trial evidence to determine whether [defendant] was a major participant and acted with reckless indifference to human life"].)

death because of the means Penuelas used to obtain De La Torre's PIN and the consequent need to destroy evidence, including eliminating the victim as a witness." (*Ibid*.) Therefore, we "conclude[d] there [was] substantial evidence Arias acted with reckless indifference to human life." (*Ibid*.)

However, our opinion—the only component of the record of conviction before us—did not address the vast majority of the actus reus and mens rea factors set forth in *Banks* and *Clark*. For instance, it did not address whether there was evidence Arias had a role in supplying or using weapons, whether Arias was present at the scene of De La Torre's murder, whether Arias was in a position to prevent De La Torre's murder or aid De La Torre, whether Arias knew weapons would be used, or whether Arias was aware of Penuelas's propensity to kill. Further, the jury's verdict and findings disclose nothing of relevance to these factors. Because the record of conviction available on appeal is simply too sparse for us to determine whether the *Banks* and *Clark* standards are met, we will reverse the order denying Arias's resentencing petition and remand for the trial court to conduct a sufficiency of the evidence review of the full record of conviction, including the trial evidence. (See *Secrease, supra*, 63 Cal.App.5th at p. 255, review granted.)

"On remand, the trial court is free to draw a different conclusion after review of the record of conviction in its entirety, subject to the following guidance." (*Secrease, supra*, 63 Cal.App.5th at p. 264, review granted.) "[W]e are remanding the case for resumption of proceedings at the section 1170.95, subdivision (c) entitlement-to-relief stage of the process, where the court's task will be narrowly focused on whether, without resolving conflicts in the evidence and making findings, the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*. If the answer to that is yes, the section 190.2, subdivision (d) finding

22

made against [Arias] forecloses him from further litigating that issue, thus rendering him ineligible for resentencing relief as a matter of law. If the answer is no, an order to show cause must issue and an evidentiary hearing must be held under section 1170.95, subdivision (d)(3)." (*Id.* at p. 264.)

## IV

## DISPOSITION

The order denying the resentencing petition is reversed and the matter is remanded for further proceedings consistent with this opinion.


McCONNELL, P. J.

WE CONCUR:


DATO, J.


GUERRERO, J.

23