Filed 3/22/22  P. v. Fajardo CA2/6
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARIA DEL CARMEN GRANADOS FAJARDO,<br><br>    Defendant and Appellant. | 2d Crim. No. B301880<br>(Super. Ct. No. F491809)<br>(San Luis Obispo County)<br><br>OPINION FOLLOWING ORDER VACATING PRIOR OPINION |

Maria Del Carmen Granados Fajardo appeals an order denying her petition for resentencing filed under Penal Code section 1170.95 following her prior conviction of second degree murder.[1]  (§ 187, subd. (a).)  The trial court did not issue an order to show cause for an evidentiary hearing.  We affirmed.  Our Supreme Court granted a petition for review and transferred this matter back with directions for us to vacate our prior opinion and reconsider the cause in light of Senate Bill No. 775.  (Stats. 2021,

_____

[1] All statutory references are to the Penal Code.

ch. 551, § 2.)  We have considered the impact of the new law, and we have decided the trial court erred by denying the petition without first issuing an order to show cause for an evidentiary hearing.  We reverse.

## FACTS[2]

Victor Sanchez was Fajardo's former boyfriend.  In 2012, Fajardo asked David Hernandez to beat up Sanchez and she offered to pay him for this plan.  Crystal Garner and Joseph Villareal became involved in this plot.  They planned to break Sanchez's leg and injure his face.

Fajardo said she would not pay unless the assailants provided proof of the assault.  The assailants planned to take Sanchez's wallet and cell phone as proof.

Pursuant to the plan, Garner invited Sanchez to meet her at a bar.  Sanchez went to the bar to meet her.  Garner and Sanchez left the bar in Sanchez's car, with Garner driving and Sanchez as a passenger.  Hernandez and Villareal followed in Hernandez's car.  Garner pulled off the road and Hernandez used his car to block Sanchez's car.

Villareal got out of Hernandez's car and hit the top of Sanchez's car with a crowbar.  Villareal screamed at Sanchez to get out of the car.  He pulled Sanchez out of the car and struck him numerous times with the crowbar.  Garner screamed for Villareal to get Sanchez's wallet and cell phone.  Sanchez tried to hand over his wallet, but Villareal continued to beat him anyway.  Garner saw a light moving in their direction.  She took Sanchez's

---

[2] Our prior opinion (*People v. Fajardo* (June 30, 2016, B261612) [nonpub. opn.]) sets forth the relevant facts, which are incorporated here.

wallet and cell phone. Garner and Villareal got into Hernandez's car and left Sanchez at the scene.

Hernandez drove to Fajardo's house and delivered Sanchez's wallet and cell phone. Fajardo gave Hernandez $6,000. Hernandez gave Villareal and Garner $1,000.

About two weeks after the assault, Fajardo visited Hernandez at his house. She complained that the assault on Sanchez was inadequate because the agreement had been to break Sanchez's leg. Fajardo offered Hernandez $25,000 to "take [Sanchez] out." Hernandez hired three men to shoot Sanchez in the kneecap. Sanchez was shot and killed at his home.

Fajardo was convicted by a jury of second degree murder (§ 187, subd. (a)), robbery (§ 211), and assault with a deadly weapon (§ 245, subd. (a)(1)). She was sentenced to an aggregate prison term of 21 years to life. On June 30, 2016, we affirmed the conviction.

On February 8, 2019, Fajardo filed a petition for resentencing under section 1170.95. She checked a box on the form petition that said, "I was convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine and I could not now be convicted of murder because of changes to Penal Code § 188, effective January 1, 2019."

The People filed an opposition claiming Fajardo did "not fall within the parameters of section 1170.95." (Emphasis omitted.) They claimed she was "a major participant in the underlying felony and acted with reckless indifference to human life." (Emphasis omitted.) She "abetted, counseled, [and] commanded" the actual killer and acted with malice. (Emphasis omitted.)

3

The trial court denied the petition. It did not issue an order to show cause for an evidentiary hearing. It found, "Fajardo was a [principal] in the commission of the crime. Consequently, I don't believe that she would be entitled to relief under [section] 1170.95. I'm further making a finding that she was a principal that acted with malice aforethought based on the pleadings. So I am going to deny the petition."

DISCUSSION

*Denying the Section 1170.95 Petition*

Fajardo and the People contend the trial court erred by prematurely denying Fajardo's section 1170.95 petition without issuing an order to show cause and conducting an evidentiary hearing. We agree.

The origin of section 1170.95 was the Governor's signing of Senate Bill No. 1437 in 2018. (Stats. 2018, ch. 1015, § 4.) "[Senate Bill No. 1437] amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person *who is not the actual killer*, did not act with intent to kill, or *was not a major participant in the underlying felony who acted with reckless indifference to human life*." (*Id.*, § 1, subd. (f), italics added; *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417.)

A defendant convicted of murder may file a petition under section 1170.95 alleging he or she "could not be convicted of first or second degree murder" because of changes to the law required by Senate Bill No. 1437. (*People v. Gutierrez-Salazar, supra*, 38 Cal.App.5th at p. 417.) "A trial court receiving a petition under section 1170.95 'shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner

4

falls within the provisions of this section. (§ 1170.95, subd (c).)" (*Ibid.*) "If the petitioner has made such a showing, the trial court 'shall issue an order to show cause.'" (*Ibid.*) The trial court must then hold a hearing to determine whether to vacate the murder conviction and resentence the petitioner. (*Ibid.*)

At that hearing the People have the burden of proof to show the petitioner is ineligible for section 1170.95 relief. (§ 1170.95, subd. (d)(3).) "The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Ibid.*)

Consequently, there are two stages involved in a section 1170.95 petition. If a prima facie showing is made for relief in the first stage, the trial court proceeds to the second stage and issues an order to show cause and the case proceeds to an evidentiary hearing. Where the prima facie showing is not made in the first stage, the court may deny the petition.

Many courts have held that where the petitioner is obviously ineligible for section 1170.95 relief, the trial court may summarily deny the petition. (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar.18, 2020, No. S260410.)

Here the parties have shown trial court error by the decision not to issue an order to show cause for a second stage section 1170.95 evidentiary hearing. They note that jury instructions in this case included the natural and probable consequences doctrine. As a result of the change in the law required by Senate Bill No. 1437, that doctrine cannot be used to support a murder conviction.

Here the jury instructions allowed the jury to return a guilty verdict on murder 1) based on a direct aider and abettor theory *or* 2) pursuant to the felony-murder rule using the natural

5

and probable consequences doctrine. The jury returned a general verdict. Consequently, it is not possible to know which of the two choices the jury used to convict Fajardo of murder. (*People v. Secrease* (2021) 63 Cal.App.5th 231, 246-247, review granted June 30, 2021, S268862.)

The trial court assumed the jury found Fajardo's words "take [the victim] out" meant Hernandez was told to kill Sanchez. But Hernandez hired three men to shoot Sanchez in the kneecap.

The jury could have found that Fajardo directed others to commit only a felony assault that ultimately resulted in a death, and, under the natural and probable consequences doctrine, this would have resulted in an automatic guilty verdict for second degree murder under the felony-murder rule.

But Senate Bill No. 1437 now bars a conviction of second degree murder under the natural and probable consequences doctrine. (*People v. Gentile* (2020) 10 Cal.5th 830, 839.) "Because the jury returned a general verdict, we cannot exclude the possibility that [Fajardo's] jury found . . . [her guilty of murder] based solely on a theory that [she] aided and abetted [the assault] and that [Sanchez's] death occurred during the commission of that offense." (*People v. Secrease, supra*, 63 Cal.App.5th at p. 246.) Consequently, we cannot assume that Fajardo shared the "murderous intent" of the actual killers. (*Id.* at p. 247.)

" '[A]bsent a record of conviction that *conclusively establishes* that the petitioner engaged in the requisite acts and had the requisite intent [for a murder conviction under current law], the trial court should not question [the petitioner's] evidence" ' at the first stage of the section 1170.95 review. (*People v. Rivera* (2021) 62 Cal.App.5th 217, 230, review granted June 9, 2021, S268405.) This, coupled with Fajardo's statements

6

in her section 1170.95 petition, support a prima facie showing for the issuance of an order to show cause for a section 1170.95 evidentiary hearing.

The dissent lays waste to the forest it depicts. The dissent is obviously dismayed by the application of recent legislation that may reduce punishment in certain cases. The legislation does not permit us to speculate about what a reasonable jury might do. From years of experience as trial attorneys and trial judges, all justices on this panel know that juries do not always render the verdicts we may expect. Whether we agree with the law or not is beside the point.

## DISPOSITION

The order denying the section 1170.95 petition is reversed. The case is remanded for the trial court to issue an order to show cause for an evidentiary hearing.

NOT TO BE PUBLISHED.


GILBERT, P. J.

I concur:


TANGEMAN, J.


7

YEGAN, J., Dissenting:

The majority opinion reverses by focusing on two trees of a forest and has done a more than admirable job if one looks narrowly at just these two trees. But when one looks at the forest, a different and full picture emerges. Even though the jury was instructed on the "natural and probable consequences doctrine," now abolished by the Legislature, it must be emphasized that the People's over-arching theory of the case was "murder for hire." This manner of committing murder has not been abolished by the Legislature. And the commonsense conclusion that can only be drawn is that this was a "murder for hire."

Appellant hired someone to break her former boyfriend's leg. This person, with cohorts, brutally assaulted the victim but did not break his leg. Appellant paid them $6,000, the agreed upon amount for the assault. This did not satisfy appellant. So she then "upped the ante" and agreed to pay them $25,000 to "take him out." She did not use the word, murder. Did she want the murderers to take him out to the ballgame? No. Did she want the murderers to take him out to dinner? No. How can I say this with such certainty? The trial record shows that she paid them the $25,000 after the victim was "taken out," i.e., murdered. Now, why would she pay them $25,000 if they did not comply with her order? Why would the price dramatically increase if they were to only wound him? They had already wounded him.

There has been no miscarriage of justice here. The majority opinion couples the "natural and probable consequences" instruction with the general verdict rule (the two trees) and says, therefore, there should be a reversal to allow an evidentiary

hearing.  This result does not inexorably flow when the entire record (the forest) is considered.

There has been no violation of Penal Code section 1170.95 opportunity to seek relief from a murder conviction.  Appellant's petition is based on her unsupported and bald claim, checking the box, that she could not now be convicted of murder.  This is balderdash.  When she comes forward in a petition with even a scant, yet innocent, showing of why she paid the actual murderer the $25,000, the Superior Court should conduct an evidentiary hearing.  If there was some showing on appeal to that effect, I would vote with majority.  She has not done so.

Appellant is fortunate to have been convicted of only second degree murder.  This was a first degree murder, as are all "murders for hire."  The Superior Court has better things to do than go on a "fool's errand."  The victim is dead because appellant premeditated and deliberated his murder and carried her plan into action.  She hired an assassin to do the job and he did the job.  As a matter of law, appellant acted with malice aforethought, was a "major participant," and acted with not only "reckless indifference to human life," but with personal goal that the victim suffer death.  Surely the Legislature did not intend leniency in this situation.

NOT TO BE PUBLISHED.


YEGAN, J.


2

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.